1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 San Francisco Division

11

| | |
|---|---|
| 12 TSI AKIM MAIDU OF TAYLORSVILLE RANCHERIA, | Case No. 16-cv-07189-LB |
| 13 | |
| Plaintiff, | **ORDER GRANTING THE DEFENDANTS' MOTION AND TRANSFERRING THE CASE TO THE EASTERN DISTRICT OF CALIFORNIA** |
| 14 v. | |
| 15 | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | Re: ECF No. 12 |
| 16 | |
| 17 Defendants. | |

18 **INTRODUCTION & BACKGROUND**

19     This case concerns the legal status of Tsi Akim Maidu of Taylorsville Rancheria, a Native

20 American Tribe (the "Tribe"), in the eyes of the federal government.[1] More specifically, the Tribe

21 challenges the government's determination that it "lost status as a federally recognized Indian

22 Tribe when the United States sold the Taylorsville Rancheria in 1966 pursuant to Congressional

23 mandate."[2]

24

25

26

---

27 [1] *See generally* Compl. – ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

28 [2] *See id.* at 2.

ORDER — No. 16-cv-07189-LB

1    That Congressional mandate — the 1958 California Rancheria Act — authorized the

2    Department of the Interior to distribute forty-one rancherias'[3] assets to "individual Indians."[4] *See*

3    Pub. L. 85-671, 72 Stat. 619 (Aug. 18, 1958), *as amended* Pub. L. 88-419, 78 Stat. 390 (Aug. 11,

4    1964). After such distribution under the Act, the recipients would not be entitled to government

5    services "because of their status as Indians . . . , all statutes of the United States which affect

6    Indians because of their status as Indians [would] be inapplicable to them, and the laws of the

7    several States [would] apply to them in the same manner as they apply to other citizens."[5] *Id.*

8    The Tribe alleges that the government sold the Taylorsville Rancheria in 1966 and thus —

9    according to the government — terminated its "status as a federally recognized tribe."[6] But, the

10   Tribe says, a sale under the Act does not "correspond[] with the termination of the status of the

11   [T]ribe."[7] In 1998, the Tribe filed a "letter of intent to petition for acknowledgment as an Indian

12   tribe," and later "sought clarification from the [government] about its status as a federally

13   recognized Tribe."[8] In June 2015, the then-Assistant Secretary of Indian Affairs "declined to

14   restore" the Tribe's status and explained that, by sale of the Taylorsville Rancheria to Plumas

15   County, the Tribe's relationship with the government was terminated.[9]

16   The Tribe then sued the Department of Interior, its Secretary, and the Assistant Secretary for

17   Indian Affairs.[10] It attacks the June 2015 decision and, among other relief, requests a declaration

18   that it "is a federally [recognized] tribe" and that its members "are Indians whose status have not

19

20
___

21   [3] "Rancherias are numerous small Indian reservations or communities in California, the lands for which were purchased by the Government (with Congressional authorization) for Indian use from time to time in the early years of [the twentieth] century — a program triggered by an inquiry (in 1905–06) into the landless, homeless or penurious state of many California Indians." *Williams v. Gover*, 490 F.3d 785, 787 (9th Cir. 2007) (quoting *Duncan v. United States*, 229 Ct. Cl. 120, 123 (1981)).

22

23

     [4] Compl. ¶¶ 21–23.

24   [5] *Id.* ¶ 23.

25   [6] *Id.* ¶¶ 11, 25.

26   [7] *See id.* ¶¶ 12–14.

     [8] *Id.* ¶¶ 4, 11.

27   [9] *Id.* ¶¶ 5, 25.

28   [10] *Id.* ¶¶ 7–9.

United States District Court
Northern District of California

1  been vanquished."[11] The government moves to dismiss the case or, in the alternative, to transfer it

2  under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).[12] (The government

3  alternatively moves to dismiss the complaint under rule 12(b)(6).)

4  The court held a hearing on the motion on May 25, 2017. The court grants the government's

5  motion because venue is improper in the Northern District of California and transfers the case to

6  the Eastern District of California.

7

8  **GOVERNING LAW**

9  Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for

10  improper venue. After a defendant challenges the venue, it is the plaintiff's burden to show that

11  venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.

12  1979). In the context of a Rule 12(b)(3) motion, the court need not accept as true all allegations in

13  the complaint, but may consider facts outside the pleadings. *See Murphy v. Schneider Nat'l, Inc.*,

14  362 F.3d 1133, 1137 (9th Cir. 2004). The court is, however, "obligated to draw all reasonable

15  inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-

16  moving party." *Id.* at 1138.

17  If venue is improper, the court may either dismiss the case without prejudice, or, if it is in the

18  "interest of justice," transfer the case "to any district or division in which it could have been

19  brought." 28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir.

20  1991) (if a court decides to dismiss a case for improper venue, dismissal must be without

21  prejudice). Ordinarily, the interest of justice requires transferring the case to the proper venue

22  rather than dismissing the case. *See Baeta v. Sonchik*, 273 F.3d 1261, 1264–65 (9th Cir. 2001).

23

24

25

26

27  [11] *Id.*, Prayer.

28  [12] Motion to Dismiss or Transfer – ECF No. 12; Opposition – ECF No. 13; Reply – ECF No. 17.

1    **ANALYSIS**

2    **1.   Venue Is Improper Under 18 U.S.C. § 1391**

3        Section 1406(a) and Rule 12(b)(3) require a district court to dismiss or transfer a case if venue

4    is "wrong" or "improper" in that district. *See* 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3);

5    *Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568,

6    577 (2013). "This question — whether venue is 'wrong' or 'improper' — is generally governed by

7    28 U.S.C. § 1391." *Atlantic Marine*, 134 S. Ct. at 577. Under that section, in cases against United

8    States officers or employees, venue is proper:

9            in any judicial district in which (A) a defendant in the action resides, (B) a
         substantial part of the events or omissions giving rise to the claim occurred, or a
         substantial part of property that is the subject of the action is situated, or (C) the

10           plaintiff resides if no real property is involved in the action.

11    28 U.S.C. § 1391(e)(1). If the case falls within one of these three categories, venue is proper. *See*

12    *Atlantic Marine*, 134 S. Ct. at 577 (discussing § 1391(b)). "[I]f it does not, venue is improper, and

13    the case must be dismissed or transferred under § 1406(a)." *Id.*

14        Generally, "all federal defendants reside in Washington, D.C." *Williams v. United States*, No.

15    C-01-0024 EDL, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001). "Venue does not lie in every

16    judicial district where a federal agency has a regional office." *Id.* (citing *Reuben H. Donnelly*

17    *Corp. v. Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978)). Federal officers and

18    employees reside at the "'official' residence — i.e., where the official duties are performed — not

19    the personal residence (where [the] defendant lives)." O'Connell & Stevenson, Rutter Group Prac.

20    Guide: Federal Civ. Pro. Before Trial § 4:426 (The Rutter Group 2017); *see also Caremark*

21    *Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 464 (S.D.N.Y. 2005) ("[V]enue with respect to

22    a federal officer or employee is proper in the place of his or her official residence, where his or her

23    official duties are performed."). And, "an entity with the capacity to sue and be sued in its

24    common name under applicable law" is, when acting as a plaintiff, deemed to reside "only in the

25    judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2).

26        Here, the case does not fall within § 1391(e). First, the Tribe makes no showing that any of the

27    federal defendants reside in this district. *See Villa v. Salazar*, 933 F. Supp. 2d 50, 55 (D.D.C.

28    2013) (finding that venue was proper in the District of Columbia "because the Secretary of the

1    Interior and Assistant Secretary for Indian Affairs 'reside[]' in the District of Columbia.")

2    (alteration in original). Second, the Tribe asserts in the complaint that venue is proper here

3    "because a substantial part of the events or omissions giving rise to [its] claims occurred *near* this

4    District."[13] But as the Tribe asserts, none of the alleged events or omissions occurred *in* this

5    district: the Tribe and the Rancheria are located in Plumas County (in the Eastern District) and the

6    challenged decision was made in Washington, D.C. (from where the then-Assistant Secretary of

7    Indian Affairs wrote the June 2015 letter).[14] Third, the Tribe — as it states on its civil cover

8    sheet — resides in Plumas County.[15] (It also alleges that it is "included in the Northeastern Maidu

9    group (aka Mountain Maidu) in Plumas County" and "occupied the American, Genesee, and

10   Indian valleys in what is now the Plumas County."[16])

11       In its opposition brief, the Tribe asserts that its members "predominantly live in the Northern

12   District" and "[t]hus, venue in this district is conclusively proper."[17] But the Tribe sues only in its

13   own name, not on behalf of its members, and none of its members are named plaintiffs. Absent

14   authority that a Native American Tribe's residence is based on its members' residence — even

15   when those members are not party to the case — the Tribe's entity-based residence controls. *See,*

16   *e.g.*, *Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 559–60 (1967)

17   (holding that the proper venue in a case involving an unincorporated entity "should be determined

18   by looking to the residence of the association itself rather than that of its individual members").

19       Because the Tribe has not shown that venue is proper in the Northern District of California

20   under § 1391(e), the case must be dismissed or transferred. *See* 28 U.S.C. § 1406(a).

21

22

23

24

---

25   [13] Compl. ¶ 2 (emphasis added).

26   [14] *See id.* ¶ 18; *see also* Weiss Decl. – ECF No. 13-1, Ex. 1.

     [15] *See* ECF No. 2; *see also* Compl. ¶ 18.

27   [16] Compl. ¶ 18.

28   [17] Opposition at 4.

## 2. The Court Transfers the Case Instead of Dismissing It

Where venue is improper, the district court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision of whether to dismiss or transfer the case is within the district court's discretion, but typically, "if there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal." O'Connell & Stevenson, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial § 4:577 (The Rutter Group 2017) (noting that "[t]ransfer avoids any statute of limitations problems and the necessity of filing and serving a new action"). In exercising its discretion, the court should consider the facilitation of an "expeditious and orderly adjudication of [the] case[] and controvers[y] on [its] merits." *Carter v. Reese*, No. C 12-5537 MMC, 2013 WL 1149812, at *2 (N.D. Cal. Mar. 19, 2013) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962)) (alterations in original).

Here, the case could have been brought in either the Eastern District of California (which encompasses Plumas County, where the Tribe resides) or the District of Columbia (where the defendants reside and where the challenged decision was made). The government concedes these points. Based on the convenience to the parties and the interests of judicial economy, the court transfers the case to the Eastern District of California.

## CONCLUSION

The court grants the defendants' motion and transfers the case to the Eastern District of California.

**IT IS SO ORDERED.**

Dated: May 25, 2017

LAUREL BEELER
United States Magistrate Judge